# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MICHAEL S. HOGUE, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>NANCY A. BERRYHILL, )<br>Acting Commisioner of the Social )<br>Security Administration,[1] )<br>)<br>Defendant. ) | Case No. CIV-16-93-RAW-SPS |

## REPORT AND RECOMMENDATION

The claimant Michael S. Hogue requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying his application for benefits under the Social Security Act. He appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such

---

[1] On January 20, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn Colvin as the Defendant in this action.

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]"  42 U.S.C. § 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g).  This Court's review is limited to two inquiries:  1) whether the decision was supported by substantial evidence, and 2) whether the correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted].  The term "substantial evidence" requires "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency.  *See Casias v. Secretary of*

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id.* §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on April 1, 1976, and was thirty-eight years old at the time of the administrative hearing (Tr. 30). He completed the eleventh grade, and has worked as a trencher (Tr. 21, 185). The claimant alleges he has been unable to work since March 2, 2010, due to a head injury from 1990 that affected his whole brain, major depressive disorder, panic disorder, agoraphobia, osteoarthritis in his ankle, depression with psychosis, and hyperlipidemia (Tr. 184).

## Procedural History

On September 28, 2012, the claimant applied for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His application was denied. ALJ Bernard Porter held an administrative hearing and determined the claimant was not disabled in a written decision dated October 8, 2014 (Tr. 9-22). The Appeals Council denied review, so the ALJ's written decision represents the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity ("RFC") to perform a range of light

work as defined in 20 C.F.R. § 416.967.1567(b), *i. e.*, he could lift/carry twenty pounds occasionally and ten pounds frequently, sit up to six hours in an eight-hour workday, stand/walk six hours in an eight-hour workday, and could push/pull as much as he is able to lift/carry. Additionally, the ALJ limited him to occasional use of foot controls and occasional overhead reaching; found that he is able to occasionally climb ramps and stairs, but should not climb ladders or scaffolds; he could frequently balance, occasionally stoop, and should not crawl. Furthermore, the ALJ determined that he should not work around unprotected heights or moving mechanical parts and should avoid temperature extremes. Finally, the ALJ limited him to simple tasks and work-related decisions, having no contact with the public, and requiring a sit/stand opinion that will allow for a brief positional change of position every thirty minutes lasting three to four minutes at a time (Tr. 13). ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *i. e.*, garment bagger, garment sorter, and electronics worker (Tr. 21-22).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly assess his credibility, and (ii) by failing to properly account for his limitations in his RFC. The undersigned Magistrate Judge agrees with the claimant's first contention.

The ALJ determined that the claimant had the severe impairments of obesity, polysubstance abuse, major depressive disorder with psychotic features, personality disorder, anxiety disorder with panic attacks, osteoarthritis of the ankle, posttraumatic

stress disorder, and a history of learning disorder (Tr. 11). The relevant medical evidence reveals that the claimant was hospitalized for eight days in April 2012 to undergo laparoscopic cholecystectomy (Tr. 260-334). In June 2012, he injured his shoulder while mowing the lawn (Tr. 250). An x-ray revealed fixation screws, but that the osseous structures were intact without fracture, and there was no evidence of screw loosening or fracture (Tr. 35). In May 2013, the claimant fell down an embankment and re-injured his right hip, and was prescribed pain medications, but the records indicate the claimant admitted to recent methamphetamine and marijuana use (Tr. 363). On June 20, 2013, the claimant had a normal CT of the brain without contrast (Tr. 348).

On December 4, 2012, Dr. Theresa Horton, Ph.D., conducted a diagnostic interview and mental status examination of the claimant (Tr. 335). She assessed the claimant with methamphetamine abuse, last use couple weeks previously by self-report; major depressive disorder, recurrent, severe with chronic irritability; and personality disorder, NOS, with prominent dependent/antisocial traits; as well as with chronic pain (Tr. 338). She stated that the claimant appeared capable of understanding, remembering, and managing simple and somewhat more complex instructions and tasks, though likely does not do well with social/emotional adjustment into occupational or social settings (Tr. 338).

On December 13, 2012, Dr. Jimmie W. Taylor assessed the claimant's physical impairments. He noted the claimant's estimated weight was 373 pounds, and that he was in no apparent distress but presented with a flat affect (Tr. 340-341). The claimant had a safe, stable, gait and walking was within normal limits, and he had 5/5 grip strength, with

no documented reduced range of motion, although he did present as positive for pain in the lumbosacral spine (Tr. 341-346). Dr. Taylor assessed the claimant with obesity, social anxiety, schizophrenia, depression, anxiety, degenerative joint disease of the hips and ankles, and hyperlipidemia (Tr. 342).

On February 12, 2013, Dr. Kavitha Reddy reviewed the medical evidence and completed an RFC assessment in which he stated that the claimant could perform medium work with no postural, manipulative, or other limitations (Tr. 75). This assessment was affirmed on reconsideration (Tr. 90-91).

As to his mental impairments, the claimant was found to be markedly impaired in the ability to understand and remember detailed instructions, carry out detailed instructions, and interact appropriately with the general public. Dr. Carolyn Goodrich further stated that the claimant could perform simple tasks, maintain appropriate pace with routine tasks, and could maintain superficial relationships with coworkers and supervisors, but would likely work better independently, and he should not work with the general public (Tr. 76-77). This, too, was affirmed on reconsideration, with the additional statement that the claimant could adapt to a work situation for superficial work-related purposes (Tr. 91-92).

At the administrative hearing, the claimant testified that he could not work because he had difficulty controlling his emotions, does not like noise such as the typing that occurred during the administrative hearing, and that he struggled with pain (Tr. 36). He also testified that he did not like the generic equivalent of the mental health medications prescribed and preferred no medications over taking the generic (Tr. 37). He

stated that he helps care for his disabled father, does chores around the house, and mows the lawn (Tr. 49-50, 55-56). He also stated that his friends provide him with illegal drugs, but that he limits contact with them, and tries to go to church (Tr. 40). Additionally, the claimant testified that pain in his ankles causes difficulty with standing for long periods of time (Tr. 46). The claimant also testified that he could lift up to 110 pounds, but doing so would be painful (Tr. 52).

In his written opinion, the ALJ extensively summarized the claimant's testimony as well the available medical evidence in the record. The ALJ used boilerplate language to find the claimant's statements not credible, but then further clarified that both his daily activities (which include "mowing the lawn, cooking, caring for his disabled father by turning and changing his diapers, doing laundry, household chores, and dishes,") and his reported ability to move furniture and pursue the leisure activities of fishing and hunting, as well as his relatively infrequent medical treatment that was both routine and conservative, affected his credibility. The ALJ then continued, noting that the claimant had not returned to a clinic that refused to continue to prescribe narcotic pain medication; that many of his clinical visits were the result of activities that were not indicative of a disabled individual, such as abdominal pain after lifting a boat, a hip injury after slipping down an embankment, and a hip injury while mowing the yard; he reported difficulties with concentration, persistence, and pace, but also said he watched television mainly for the noise then said that noise bothered him, and reported reading newspapers, magazines, and fishing; and that he reportedly liked to stay to himself but then stated that he enjoyed fishing when he had someone to go with (Tr. 20). Furthermore, the ALJ noted the

claimant's credibility had been lessened with his reported and admitted use of illegal drugs, as well as his evasiveness when asked about it at the hearing (Tr. 20).

The claimant contends, *inter alia*, that the ALJ erred in analyzing his credibility. At the time of the ALJ's decision, a credibility determination was governed by Soc. Sec. Rul. 96-7p. *See, e .g., Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (July 2, 1996). But the Commissioner issued a ruling on March 16, 2016, that eliminated the term "credibility" and provided new guidance for evaluating the intensity, persistence, and limiting effects of a claimant's symptoms. Soc. Sec. Rul. 16-3p, 2016 WL 1119029 (Mar. 16, 2016). "Generally, if an agency makes a policy change during the pendency of a claimant's appeal, the reviewing court should remand for the agency to determine whether the new policy affects its prior decision." *Frantz v. Astrue,* 509 F.3d 1299, 1302 (10th Cir. 2007), *quoting Sloan v. Astrue,* 499 F.3d 883, 889 (8th Cir. 2007). Although the ALJ's credibility analysis was arguably sufficient under the old standard, the record does not reflect how the ALJ would have evaluated the claimant's subjective statements under Soc. Sec. Rul. 16-3p.[3] Consequently, the decision of the Commissioner must be reversed and the case remanded to the ALJ for evaluation in accordance with the new standard.

---

[3] While it is arguable that the evidence cited by the ALJ in support of his credibility determination would likewise have satisfied Soc. Sec. Rul. 16-3p, thus obviating the need for reversal and remand, *see, e. g., Wellenstein v. Colvin,* 2015 WL 5734438, at *11 (N.D. Iowa Sept. 30, 2015) (noting that the Court of Appeals for the Eighth Circuit denied remand for consideration of a new social security ruling upon finding that "although the policy changed during the pendency of the case, the policy did not affect the case."), *citing Van Vickle v. Astrue,* 539 F.3d 825, 829 n.6 (8th Cir. 2008), the undersigned Magistrate Judge finds that any re-evaluation of the evidence in light of the new standard is not for this court to make on review but rather for the ALJ to consider in the first instance.

**Conclusion**

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 10th day of March, 2017.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**